CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 23 2010

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG
~~ROANOKE~~ DIVISION

| | |
|---|---|
| ROBERT G. MISKA, | ) |
| | ) |
| Plaintiff, | ) Case No. 5:09CV00092 |
| | ) |
| v. | ) |
| | ) MEMORANDUM OPINION |
| | ) |
| KIERAN H. BARTLEY, ET AL., | ) By: Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

Plaintiff Robert G. Miska, a former Virginia inmate, brings this action as a civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. The matter is now before the court on Miska's second amended complaint in which he alleges that the defendants conspired to deprive him of pretrial jail credit, in violation of his constitutional rights.[1] The four named defendants filed motions to dismiss, and the parties presented oral argument to the court on November 12, 2010. Upon review of the record, the court finds that the motions to dismiss must be granted.

---

[1] The defendants named in the second amended complaint are: Kieran H. Bartley, Miska's defense attorney; Judge Humes J. Franklin, Circuit Court for the City of Staunton; Jack Lee, Superintendent of the Middle River Regional Jail (MRRJ); Richard Whitmore, Records Supervisor of MRRJ; John Doe 1, the deputy court clerk who prepared Miska's sentencing order; John Doe 2, Clerk of the Circuit Court for the City of Staunton; John Doe 3, Virginia Department of Corrections (VDOC) Court & Legal Services employee who did not give Miska credit for pretrial jail time served; and John Doe 4, the official in charge of Court & Legal Services.

## I. BACKGROUND

### A. Factual Allegations

The plaintiff's second amended complaint states the following factual allegations, which must be accepted as true for purposes of the defendants' motions to dismiss.[2]

Miska was arrested and jailed on felony charges in Staunton, Virginia on June 23, 2006. An indictment issued against him in October 2006, and shortly thereafter, Defendant Kieran H. Bartley became his defense attorney. Judge Humes J. Franklin, of the Circuit Court for the City of Staunton, presided over the jury trial. The jury found Miska guilty of the eleven felonies as charged and fixed his sentence at two months on each count, to be served consecutively, for a total active sentence of 22 months. On November 2, 2007, after reviewing a presentence report and conducting a sentencing hearing, Judge Franklin imposed the total 22-month sentence as fixed by the jury. The judge also ordered that Miska would not be given credit for time already served on these charges. The judge's comments at the hearing "indicated that he thought Miska's punishment by the jury was too lenient, and the denial of jail credit was a reaction to it, rather than a mistake." (Second Amended Compl. ¶ 18.) The presentence report indicated that Miska had no other charges to which the jail time could have been credited.

---

[2] Miska filed his § 1983 complaint in November 2009, naming Bartley, Franklin, and Whitmore and John Does 1-4 in the caption of the case. In an amended complaint, filed March 17, 2010, he added Lee to the caption. Defendants filed motions to dismiss, and the court conducted oral arguments on June 30, 2010. By final order entered later that day, the court granted the motions to dismiss, noting that many of the plaintiff's § 1983 claims were "without merit as a matter of law." The court also noted that plaintiff had failed to allege facts sufficient to state a § 1983 conspiracy claim against anyone, but granted plaintiff thirty days in which to file an amended complaint. Plaintiff submitted the second amended complaint on July 30, 2010, and the court reinstated the case to the active docket.

Neither the prosecutor nor Bartley objected during the sentencing hearing to the judge's pronouncement regarding jail credit. Miska questioned Bartley about the denial of jail credit "to no avail." (Id. ¶ 19.)

The sentencing order, prepared in the clerk's office by John Doe 1 and entered on November 8, 2007, stated that Miska "shall not be given credit for time already served on these charges." John Doe 2, in his position as clerk of court, the prosecutor, and Bartley reviewed this order before its entry, but none of them objected to the language denying jail credit.

Bartley filed an appeal on Miska's behalf to the Court of Appeals of Virginia (denied August 13, 2008) and a petition for a writ of certiorari to the Supreme Court of Virginia (denied February 6, 2009). Bartley did not assert denial of jail credit as an issue in these proceedings and also failed to "seek review of the issue under the 'ends of justice' exception under which favorable precedent existed." (Id. ¶ 21.)

Miska was incarcerated at MRRJ before and after trial. MRRJ employees Lee and Whitmore, as part of their employment responsibilities at the jail, had a statutory duty to report to the VDOC the amount of jail time Miska had served between arrest and transfer to a VDOC prison facility. The reporting form sent from MRRJ to the VDOC regarding Miska's jail service stated that Miska was sentenced on November 2, 2007, and that "PER COURT ORDER . . . SUBJECT GETS NO CREDIT FOR TIME SERVED." (Id. ¶ 23.) VDOC records officials (John Does 3 & 4), in computing the length of Miska's term of confinement, did not give him any credit for incarceration prior to November 2, 2007, the date of sentencing.

Miska was transferred from MRRJ to the VDOC on March 7, 2008 and released from confinement on May 13, 2009. He did not receive credit against his 22-month sentence for the

16 months and nine days of jail time he served prior to sentencing. He asserts that, had he received credit for this time served, plus good conduct credit that he earned while incarcerated at MRRJ, he would nearly have satisfied his 22-month obligation before entering the VDOC. Instead, he was incarcerated for a total of almost 35 months.

### B. Miska's Claims

Based on the foregoing allegations, Miska asserts that the defendants conspired to violate his constitutional right to equal protection, in violation of the Fourteenth Amendment of the United States Constitution (Count I). Specifically, he avers that Judge Franklin, in entering the sentencing order denying Miska credit for pretrial jail time served, knowingly acted outside of his jurisdiction to inflict an unlawful, additional term of incarceration upon Miska. Miska further asserts that the other defendants conspired in the following manner with Judge Franklin to put this illegal prison term into effect: Bartley took no action at sentencing or during the appeal process to seek expungement of this illegal sentence; John Does 1 & 2, in preparing the sentencing order, made no effort to correct Judge Franklin's illegal sentence; jail officials Lee and Whitmore, in their report to the VDOC regarding Miska's jail time served, referred expressly to the judge's denial of pretrial jail credit; and John Does 3 and 4, employees of the VDOC Courts and Legal Department, complied with the judge's order to deny Miska any pretrial jail credit, although they knew that the judge had no authority under Virginia's statutory scheme to deny jail credit. Miska asserts that "the successive combination of [all of the defendants'] actions created a chain conspiracy to injure Miska, and to impede, hinder, obstruct, or defeat the course of justice in his sentencing, causing over a year of illegal incarceration." (Id. ¶ 30.) Miska also asserts a supplemental state law claim that Defendant Bartley's failure to object or appeal

concerning the denial of jail credit "constituted negligence and legal malpractice" (Count II). (Id. ¶ 32.)

Miska seeks to recover actual and compensatory damages in an amount to be determined at trial for mental suffering and loss of liberty, income, and property, as well as interest on any actual or compensatory damages, attorney fees and costs, and "other and further relief as the court may deem just and proper."

## II. DISCUSSION

### A. Standard of Review

The defendants have moved to dismiss Miska's § 1983 claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable")). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[A] complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 557).

## B. Miska's Section 1983 Claims

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Put another way, the plaintiff must show that each defendant's alleged infringement of the plaintiff's federal rights is 'fairly attributable to the State.' Id. at 49 (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)). This state action analysis has two parts:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

Lugar, 457 U.S. at 937 (omitting citations).

An inmate has a federal constitutional right to receive credit against his term of confinement for any periods of incarceration served while awaiting trial or sentencing or pending

appeal.³ Durkin v. Davis, 538 F.2d 1037, 1039-40 (4th Cir. 1976) (citing other cases). In cases where the total time served before and after sentencing does not exceed the statutory maximum for the offense, some courts apply a "conclusive presumption" that the sentencing judge gave credit for jail time served when calculating the sentence imposed. Id. at 1040 n. 7. In the Fourth Circuit, however, no such presumption applies, and the reviewing court must look to the facts of the case to determine whether the trial judge, in imposing sentence, gave the inmate credit for time served before sentencing. Id. (citing Padgett v. United States, 387 F.2d 649, 649 (4th Cir. 1967)).

A Virginia inmate also has a statutory right to receive credit against his criminal sentence for pretrial and post-conviction jail time served. Virginia Code § 53.1-187 provides:

> Any person who is sentenced to a term of confinement in a correctional facility shall have deducted from any such term all time actually spent by the person . . . in a state or local correctional facility awaiting trial or pending an appeal, or in a juvenile detention facility awaiting trial for an offense for which, upon conviction, such juvenile is sentenced to an adult correctional facility. When

---

³ The District Court in Durkin found that the constitutional right to pretrial and post-conviction jail credit is grounded in the Fifth, Sixth, and Fourteenth Amendments. Durkin v. Davis, 390 F. Supp. 249, 253-54 (E. D. Va. 1975).
> [T]he equal protection clause commands that an indigent criminal defendant be given pre-conviction confinement credit toward his sentence. . . . The failure to give pre-conviction confinement credit to that class of persons who are too poor to make bail would work an invidious discrimination against them solely because of their indigency.
>    [F]ailure to give pre-conviction sentence credit to a convicted criminal defendant may burden the Sixth Amendment right to plead not guilty and be tried by a jury. The prospect of lingering in jail until trial and earning no credit toward one's sentence, if found guilty, may induce the defendant to give a quick guilty plea so that he can start serving off his sentence. . . .
>    Similarly, [i]f a convicted person were not given post-conviction confinement credit toward his sentence, then he might be inhibited from exercising his right of appeal.
>    [T]he failure to give post-conviction credit to a convicted person who remains in confinement pending appeal effectively punishes that person twice for the same offense. Punishment is exacted once by confining the person from conviction to final disposition of his appeal, and is exacted again when the convicted person begins service of his sentence. The Fifth Amendment guarantee against double jeopardy, made applicable to the states by the Fourteenth Amendment . . . protects against multiple punishments for the same offense.

Id. at 253-54 (omitting internal quotations and citations).

entering the final order in any such case, the court shall provide that the person so convicted be given credit for the time so spent.

In no case shall a person be allowed credit for time not actually spent in confinement or in detention. In no case is a person on bail to be regarded as in confinement for the purposes of this statute. No such credit shall be given to any person who escapes from a state or local correctional facility or is absent without leave from a juvenile detention facility.

<u>Any person sentenced to confinement in a state correctional facility, in whose case the final order entered by the court in which he was convicted fails to provide for the credit authorized by this section, shall nevertheless receive credit for the time so spent in a state correctional facility</u>. Such allowance of credit shall be in addition to the good conduct allowance provided for in Articles 2 (§ 53.1-192 et seq.) and 3 (§ 53.1-198 et seq.) of this chapter or the earned sentence credits provided for in Article 4 (§ 53.1-202.2 et seq.) of this chapter.

Va. Code § 53.1-187 (emphasis added). Under this section and other Virginia statutes and regulations governing sentence credits in general,[4] the obligation to determine and apply pretrial jail credit for VDOC inmates rests with designated representatives of the Department of Corrections, not the trial judge. See Commonwealth v. Bertini, 68 Va. Cir. 255, 2005 WL 2242830, *2-3 (2005) (unpublished) (citing Fishback v. Commonwealth, 532 S.E.2d 629, 633 (Va. 2000)).[5] Implicit in this statutory scheme is the fact that a Circuit Court judge is "without

---

[4] See, e.g., Va. Code § 53.1-20 (providing that persons sentenced to more than one year are placed in VDOC custody); Va. Code § 53.1-24 (providing VDOC is required to keep copy of judgment order and other records concerning term of confinement, offense, and date received into a state correctional facility); Va. Code § 53.1-28 (providing VDOC has authority to fix offender's discharge date); Va. Code § 53.1-187 (providing entitlement to sentence credit for pretrial jail time); Va. Code § 53.1-188 (requiring VDOC to keep conduct records of prisoners for purposes of determining earned sentence credits); and Va. Code § 53.1-202.4 (providing requirement for Board of Corrections to establish rules governing applicability of earned sentence credits awarded for keeping rules and participating in rehabilitative programing while incarcerated).

[5] See also Carroll v. Johnson, 685 S.E.2d 647, 688-89 (Va. 2009) (recognizing in dicta that VDOC's Court and Legal Services Section is responsible for computing inmates' sentences, but holding that Circuit Court had habeas corpus jurisdiction to entertain inmate's claim that VDOC officials wrongfully denied him credit for pretrial jail service).

- 8 -

jurisdiction to determine the issue of . . . sentence credit, as this decision rests solely within the discretion of the Department of Corrections and [its] designees."[6] Bertini, 68 Va. Cir. at *4.

### 1. Judge Franklin

The court concludes that Miska has alleged sufficient facts to state a § 1983 claim against Judge Franklin. First, in sentencing Miska and denying him jail credit, the judge clearly acted under color of state law as defined in Lugar, supra. The judge is employed by the state, and his actions are undeniably attributable to the state. Second, Miska has alleged facts indicating that the judge's actions deprived Miska of statutorily guaranteed right to receive credit for pretrial jail time served and burdened his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments. Judge Franklin's order imposed the 22-month sentence fixed by the jury and then expressly denied Miska credit against that sentence for the pretrial jail time he had served. Third, the judge's order <u>caused</u> Miska to be incarcerated 16 months and 9 days longer than the sentence fixed by the jury. Instead of fulfilling their statutory duty under § 53.1-187 to calculate and grant

---

[6] The Court in the Bertini decision initially noted: "There is no explicit authority governing whether a circuit court has jurisdiction, after sentencing, to order that the Department of Corrections apply credits towards a penitentiary sentence imposed by that court." 68 S.E.2d at *2. Analyzing the statutory scheme, however, the Court ultimately held that corrections' officials, and not individual judges, have the necessary information to calculate the appropriate amount of sentence credit to apply against a defendant's sentence; by statute, corrections officials receive, create, and maintain the necessary records concerning the prisoner's jail service, before and after trial, and any sentence reduction credits he may have earned during incarceration for keeping prison rules and participating in rehabilitative programming. Id. at *2-*4.

Miska pretrial and post-conviction jail credit, VDOC employees followed Judge Franklin's order and did not give Miska any credit for jail time served.[7]

The finding that Miska has alleged facts stating a § 1983 claim against Judge Franklin does not mean that this claim survives the motion to dismiss, however. The judge argues that he is entitled to judicial immunity against Miska's claims for monetary damages, and the court agrees.

It is well-established that judges are absolutely immune from liability for damages arising out of their judicial actions. Chu v. Griffith, 771 F.2d 79, 81 (4th Cir.1985) (citing Bradley v. Fisher, 80 U.S. 335 (1871); Stump v. Sparkman, 435 U.S. 349, 356 (1978)). The doctrine of judicial immunity is expansive. Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985) (quoting Bradley, 80 U.S. at 347). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." Stump, 435 U.S. at 356. To overcome the defense of judicial immunity, a plaintiff must demonstrate that the judge's actions were not undertaken in his judicial capacity or were taken in the complete absence of all jurisdiction. Mireles v. Waco, 502 U.S. 9, 11-12 (1991).

---

[7] By law, the VDOC employees charged with calculating Miska's sentence should have ignored the judge's pronouncement that Miska should not receive jail credit, just as they are required to give appropriate credit even when the judge fails to order. § 53.1-187, unnumbered para. 3. Miska's allegations about the judge's expressed discontent with the jury's sentence, however, support a reasonable inference that the judge did not order denial of jail credit with any expectation that VDOC employees would ignore his order and, nevertheless, apply appropriate jail credit in accordance with the statute. Moreover, imposing a total penalty greater than the 22 months fixed by the jury, whether by refusing Miska credit for jail time or by increasing the sentence length itself, was not authorized by law. See Batts v. Commonwealth, 515 S.E.2d 307, 315 (Va. App. 1999) (finding that the trial judge can ameliorate the harshness of a jury sentence, but he "may not exceed the maximum punishment fixed by the jury"); Va. Code § 19.2-303 ("After conviction, . . . the court may suspend imposition of sentence or suspend the sentence in whole or part . . . ).

"[The factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362. With respect to the second inquiry, courts must distinguish between actions that are taken in the "clear absence of all jurisdiction" over the subject matter, which are not afforded the protection of judicial immunity, and actions that are merely in "excess of jurisdiction," which are afforded such protection. Id. at 356. The Supreme Court in Bradley illustrated the distinction between these terms, using the following examples:

> [I]f a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked.

80 U.S. at 352. See also Stump 435 U.S. at 359-60, 362 (holding that since judge's court was one of general jurisdiction, neither his procedural errors nor the fact that his judicial act was not specifically authorized by statute deprived him of judicial immunity).

Applying these principles to Miska's claim, the court cannot find that Judge Franklin acted in the "clear absence of jurisdiction." The Circuit Court clearly had jurisdiction over Miska's criminal charges, and the judge had jurisdiction to decide and impose a criminal penalty

on Miska once convicted. Indeed, the judge had jurisdiction and statutory authority to order that jail credit be applied against Miska's sentence. As in Stump and Bradley, the fact that the judge did not have statutory jurisdiction to increase the penalty returned by the jury or to deny jail credit renders his action merely "in excess of" his authority and jurisdiction, because he undertook these unlawful actions in the course of exercising his general jurisdiction as a criminal court judge to determine a penalty for Miska's offenses. For these reasons, the court concludes that Judge Franklin did not act "in the absence of jurisdiction" in denying Miska pretrial jail credit. Therefore, he is entitled to absolute, judicial immunity against Miska's claims for damages in this action. On that ground, the motion to dismiss must be granted.

### 2. Defense Counsel Bartley

Defense attorneys representing criminal defendants do not act "under color of" state law and are, therefore, not amenable to suit under § 1983, whether privately retained, Deas v. Potts, 547 F.2d 800, 800 (4th Cir. 1976), court appointed, Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980), or employed as public defenders, Polk County v. Dodson, 454 U.S. 312, 325 (1981). Thus, whether Bartley was retained or court-appointed, his actions in representing Miska during criminal and appellate proceedings were not taken under color of state law. Accordingly, unless Miska establishes some other ground on which Bartley's actions are "fairly attributable to the state," this defendant is not subject to suit under § 1983.

An individual who otherwise does not act under color of state law may be found subject to suit under § 1983 if plaintiff alleges facts showing that this individual engaged in a conspiracy with a state actor to deprive him of constitutional rights. Tower v. Glover, 467 U.S. 914, 919-20 (1984); Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). A conspiracy claim requires a factual

showing that the defendants shared a "unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement" to injure the plaintiff. American Tobacco Co. v. United States, 328 U.S. 781, 810 (1946); Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996) (finding that § 1983 conspiracy claim requires "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective"– a shared "intent to commit an unlawful objective"). Without such evidence, the independent acts of two or more individuals do not amount to a conspiracy. Id.; Murdaugh Volkswagen v. First National Bank, 639 F.2d 1073, 1075-76 (4th Cir. 1981). Where a complaint makes only conclusory allegations of an agreement, the court may properly dismiss the conspiracy claim. See Twombly, 550 U.S. at 556-57 (granting motion to dismiss upon finding that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to state plausible claim of conspiracy).

Miska asserts that Bartley conspired with Judge Franklin and others to deprive his client of established constitutional and statutory rights to credit for pretrial jail time served. In support of this argument, he contends that Bartley "knew or should have known" that the judge's denial of credit was a violation of federal constitutional and state statutory law and that it would cause Miska to be incarcerated beyond the expiration of his lawful sentence, but that Bartley nevertheless failed to object to the judge's order during the sentencing hearing or after reviewing the written sentencing order and failed to raise the issue on appeal or to "seek review under the 'ends of justice' exception under which favorable precedent existed." (Second Amended Compl. ¶¶ 18-19, 21, 27.) Miska asserts that the "successive combination" of Bartley's actions with

those of the judge and the other defendants "created a chain conspiracy to injury Miska" by causing him to be illegally incarcerated for over a year. (Id. ¶ 30.)

Miska does not support these conclusory assertions with any factual allegations indicating that Bartley communicated or acted in concert with the judge or any other defendant so as to support a reasonable inference that he shared with them a common conspiratorial objective to commit an unlawful act. Indeed, the allegations do not suggest that Bartley refrained from raising the sentence credit issue with any personal intention to violate Miska's rights. His omissions may just as easily be interpreted as simple oversight or legal mistake. Thus, Miska's reliance on these actions alone as evidence of a conspiracy is speculation and conjecture at best. For these reasons, the court concludes that Miska's second amended complaint fails to state a plausible claim of conspiracy against Bartley so as to render him subject to suit under § 1983. Accordingly, the defendants' motion to dismiss must be granted as to Miska's § 1983 claim against Bartley.[8]

### 3. Jail Officials Lee and Whitmore

The local jail officials, as state employees, were acting under color of state law during the actions Miska challenges. Therefore, they are subject to suit under § 1983.[9] The court

---

[8] Miska's claim alleging that Bartley's omissions constituted legal malpractice will be separately addressed.

[9] The original complaint omitted Jack Lee, MRRJ Superintendent, from the caption of the case, although the complaint itself referred to Lee as a defendant and described his alleged misconduct. (Compl. ¶ 11.) The court granted leave to amend, and the amended complaint named Lee as a defendant in the caption. Defendants argue that because Lee was not identified as a defendant until March 2010, Miska's claims against this defendant are barred by the applicable statute of limitations. See Owens v. Okure, 488 U.S. 235, 239-40 (1989) (finding that § 1983 claims fall under the residual personal injury limitation statute in state where injuries occurred); Va. Code Ann. § 8.01-243(a) (stating two-year limitation period for personal injury claims). The court believes that the claim raised against Lee in the amended complaint relates back to Miska's timely filed complaint, pursuant to Fed. R. Civ. P. 15(c). Because the court also concludes that Miska fails to allege facts stating any actionable § 1983 claim against Lee, however, the court need not make detailed findings on timeliness.

concludes, however, that Miska fails to allege facts stating any actionable § 1983 claim against them under this section.

Virginia law requires jail officials (1) to keep accurate records of jail time an inmate has served and his conduct record while incarcerated at the jail, and (2) to transmit these records to VDOC personnel when the inmate transfers to a VDOC facility. See Va. Code § 53.1-116(a); 6 VAC 15-31-100.

Miska's allegations do not indicate that Lee and Whitmore failed to comply with their statutory duties to keep record of Miska's jail time served and to transmit that record to VDOC personnel when Miska was transferred from MRRJ to a VDOC prison facility in March 2008. Instead, Miska complains that the transmitted jail record form these defendants prepared and sent included the language from the judge's order that Miska was not to receive credit for pretrial jail time served. Even assuming that the addition of this language to the reporting form was not required or even authorized by state statutes and regulations, state statutes authorized VDOC staff to override a judge's mistakes or errors affecting jail credit. § 53.1-187. Moreover, state statutes required VDOC personnel to obtain a copy of the criminal judgment order itself for use in determining appropriate jail credit. See § 53.1-24. Therefore, Miska's allegations offer no factual support for his claim that the notation about jail credit on the MRRJ reporting form caused VDOC officials to deny him credit for the pretrial jail time he had served. Failure to

demonstrate that the defendants' actions under color of state law caused the alleged constitutional violation (the denial of jail credit) is fatal to Miska's § 1983 claim against Lee and Whitmore.[10]

Lee and Whitmore are also implicated in plaintiff's conspiracy allegations. However, for reasons stated above, the court has concluded that plaintiff has failed to plead facts such as would support a finding of a conspiracy between any of the defendants. See Twombly, 550 U.S. at 556-57. Accordingly, the court will grant the motion to dismiss filed on behalf of Lee and Whitmore.

### C. Legal Malpractice Claim Against Defense Counsel Bartley

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 US. 375, 377 (1994). Generally, a case originally filed in a federal district court falls under federal question jurisdiction, 28 U.S.C. § 1331, or diversity of citizenship jurisdiction, 28 U.S.C. § 1332.

Miska's claims under § 1983, arising under a federal statute and various constitutional provisions, fall within the court's § 1331 federal question jurisdiction and also within its limited civil rights jurisdiction pursuant to § 1343. These claims under federal law will be dismissed, however, for the reasons stated. Miska's legal malpractice claim arises under state law. Because § 1983 was intended to protect only federal rights and not tort claims for which there are adequate remedies under state law, see Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985), the

---

[10] Moreover, the jail officials appear to have derivative immunity, inasmuch as they were merely conveying the order of the court to VDOC officials. See McCray v. Maryland, 456 F.2d 1, 5 (4th Cir. 1972) (finding that state court clerk cannot be liable under § 1983 for actions taken "in obedience to a judicial order or under the court's direction"), overruled on other grounds by Pink v. Lester, 52 F.3d 73 (4th Cir. 1995).

legal malpractice claim is thus not independently actionable under § 1983 or any other federal statute and so does not fall under the court's § 1331 or § 1343 jurisdiction.

To invoke the court's diversity jurisdiction under 28 U.S.C. § 1332(a), the complaint must demonstrate complete diversity of citizenship between the plaintiff and all of the defendants and make a showing that the amount in controversy exceeds $75,000. Miska neither alleges facts indicating the necessary diversity of citizenship between himself and Bartley nor alleges the necessary amount in controversy so as to bring his legal malpractice claim under the court's § 1331 diversity jurisdiction.

Where a plaintiff raises a state law claim in the same lawsuit with related federal claims, the court has discretion to exercise supplemental jurisdiction to address the state law claims on the merits. See 28 U.S.C. § 1367. In a case such as this one, however, in which all of the federal claims are dismissed before trial, the court should dismiss any state law claim without prejudice to its adjudication in a state court. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). Accordingly, the court declines to exercise supplemental jurisdiction over Miska's state law claims, pursuant to 28 U.S.C. § 1367(c), and will dismiss them without prejudice.

### **D. John Doe Defendants**

Miska filed a motion to amend on November 9, 2010, to substitute Robert E. Thomas as John Doe 2, Clerk of Court for the Circuit Court of the City of Staunton. The other named defendants filed their motions to dismiss on August 6 and 19, 2010. Because Miska's motion to amend was not submitted within 21 days after these motions were filed, he may amend only with leave of court. Fed. R. Civ. P. 15(a). While the rule directs the court to freely give leave to amend when the interests of justice so require, the court does not find this condition satisfied

here. This defendant appears to have derivative judicial immunity, inasmuch as he was merely preparing, entering, and/or disseminating the order of the court. See McCray, 456 F.2d at 5 (finding that state court clerk cannot be liable under § 1983 for actions taken "in obedience to a judicial order or under the court's direction"). Moreover, the court has concluded that Miska's conspiracy claim, which allegedly implicated this defendant, is too conclusory to survive a motion to dismiss. Accordingly, the motion to amend will be denied as futile, and all claims against this defendant, in his own name and as John Doe 2, are summarily dismissed.

Miska has failed to identify or accomplish service on John Does 1, 3, and 4, and the court is not aware of any continuing efforts to identify these defendants. Because more than 120 days has passed since the initial complaint was filed, Rule 4(m) of the Federal Rules of Civil Procedure requires the court, on its own motion, to dismiss the claims against these defendants without prejudice. Miska fails to demonstrate good cause for his failure to identify and serve these individuals within the time allotted under the rule. Therefore, the court will dismiss all claims against them, pursuant to Rule 4(m).

## III. CONCLUSION

For the stated reasons, the court concludes that the motions to dismiss must be granted as to plaintiff's claims under § 1983; plaintiff's state law claim of legal malpractice must be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c); plaintiff's motion to amend must

be denied; and all claims against the John Doe defendants must be dismissed without prejudice, pursuant to Rule 4(m). An appropriate order will issue this day.

ENTER: This 22nd day of November, 2010.

/s/ Glen Conrad
Chief United States District Judge